1
2
3
4
5
6
7

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RUTH ESCOBAR,

       Plaintiff,                    No. 2:11-cv-2656 CKD

    vs.

MICHAEL J. ASTRUE,             ORDER
Commissioner of Social Security,

       Defendant.

_____/

       Plaintiff seeks judicial review of a final decision of the Commissioner of Social

Security ("Commissioner") denying applications for Disability Income Benefits ("DIB") and

Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act

("Act"), respectively.  For the reasons discussed below, the court will deny plaintiff's motion for

summary judgment and grant the Commissioner's cross-motion for summary judgment.

BACKGROUND

       Plaintiff, born September 12, 1977, applied on August 29, 2008 for SSI benefits

and applied on September 26, 2008 for DIB, alleging disability beginning November 17, 2007.

Administrative Transcript ("AT") 128-136.  Plaintiff alleged she was unable to work due to

mental illness, learning disorder, depression and suicidal thought.  AT 159.  In a decision dated

\\\\\

1

January 22, 2010, the ALJ determined that plaintiff was not disabled.[1]  AT 16-25.  The ALJ

made the following findings (citations to 20 C.F.R. omitted):

> 1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.
>
> 2.  The claimant has not engaged in substantial gainful activity since November 17, 2007, the alleged onset date.
>
> 3.  The claimant has the following severe impairments: borderline intellectual functioning; major depressive disorder, personality disorder; substance abuse in remission.
>
> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

\\\\\

---

[1]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can perform simple repetitive tasks with occasional public, co-worker, and supervisor contact; she can maintain concentration, persistence and pace for simple job tasks.

6.    The claimant is unable to perform any past relevant work.

7.    The claimant was born on September 12, 1977 and was 30 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.

8.    The claimant has at least a high school education and is able to communicate in English.

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.    The claimant has not been under a disability, as defined in the Social Security Act, from November 17, 2007 through the date of this decision.

AT 18-25.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ erred in relying on the opinions of an examining psychologist and a non-examining medical expert; (2) the ALJ erred at step three of the sequential analysis in failing to find plaintiff's mental impairments met a Listing; and (3) the hypothetical posed to the vocational expert by the ALJ was incomplete. Plaintiff also contends the Appeals Council erred in denying plaintiff's request for review of the ALJ's decision and that the additional records submitted to the Appeals Council support a finding of disability.

1 | LEGAL STANDARDS

2 |       The court reviews the Commissioner's decision to determine whether (1) it is

3 | based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in

4 | the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999).

5 | Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v.

6 | Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence

7 | as a reasonable mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d

8 | 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The

9 | ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and

10 | resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations

11 | omitted).  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more

12 | than one rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

13 | The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir.

14 | 1986), and both the evidence that supports and the evidence that detracts from the ALJ's

15 | conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may

16 | not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.;

17 | see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports

18 | the administrative findings, or if there is conflicting evidence supporting a finding of either

19 | disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d

20 | 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was

21 | applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

22 | ANALYSIS

23 |     A.  Medical Opinions

24 |       Plaintiff contends the ALJ erroneously relied on the opinions of an examining

25 | physician and the state agency physician and in so doing, ignored the findings and opinions of

26 | plaintiff's treating physicians.  The weight given to medical opinions depends in part on whether

1  they are proffered by treating, examining, or non-examining professionals.  Lester v. Chater, 81

2  F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating

3  professional, who has a greater opportunity to know and observe the patient as an individual.  Id.;

4  Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

5         To evaluate whether an ALJ properly rejected a medical opinion, in addition to

6  considering its source, the court considers whether (1) contradictory opinions are in the record,

7  and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

8  treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81

9  F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be

10  rejected for "specific and legitimate" reasons, that are supported by substantial evidence.  Id. at

11  830.  While a treating professional's opinion generally is accorded superior weight, if it is

12  contradicted by a supported examining professional's opinion (e.g., supported by different

13  independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d

14  1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In

15  any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical

16  findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory,

17  minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a

18  non-examining professional, without other evidence, is insufficient to reject the opinion of a

19  treating or examining professional.  Lester, 81 F.3d at 831.

20         The ALJ found persuasive the opinion of examining psychologist Dr. Finkel.  AT

21  22, 322-325.  In November, 2008, after taking a psychosocial history, performing a mental status

22  exam, and administering objective testing, Dr. Finkel opined that plaintiff was capable of

23  following simple instructions and following through on simple tasks without direct supervision.

24  Dr. Finkel further opined that plaintiff's attention span was mildly impaired, concentration was

25  moderately impaired, and interaction with supervisors and peers was likely moderately impaired

26  due to personality issues.  AT 325.  The ALJ also accorded significant weight to the opinion of

5

Dr. Polizos, a state agency reviewing psychiatrist.  AT 22, 340-342.  Dr. Polizos opined, after

reviewing plaintiff's medical records and the written opinion of consulting psychologist Dr.

Finkel, that plaintiff was able to perform simple routine tasks and able to maintain and sustain

attention, concentration, pace and persistence.  AT 342.

Plaintiff contends the ALJ should not have accorded significant weight to these

opinions because they are inconsistent with the opinions of plaintiff's treating physicians.

However, none of plaintiff's treating physicians provided any mental residual functional capacity

assessments.  While acknowledging the lack of such assessments in the record, plaintiff instead

relies on the GAFs[2] assessed by the various mental health providers.  The GAF scores in the 41-

50 range cited by plaintiff, however, relate to times when plaintiff was abusing drugs,[3] living on

the streets and experiencing legal difficulties due to prostitution and losing custody of her

daughter.  AT 297, 305 (January 2008, GAFs of 40 and 50, substance abuse), 288 (April 2008,

GAF 51, substance abuse) 267, 270-271 (August 2008, GAF 40, homelessness), 279 (August

2008, GAF 45, substance abuse), 395 (September 2008, GAF 57, substance abuse); cf. AT 324

(November 2008, GAF 65),[4] 412-413 (January 2010, GAF 75), 402 (May 2010, GAF 56), 410

(September 2010, GAF 56).

/////

/////

---

[2]  GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders at 34 (4th ed. 2000) ("DSM IV-TR").  A 41-50 rating indicates serious symptoms such as suicidal ideation, severe obsessional rituals, or serious impairment in social, work, or school functioning.  A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school function (e.g., few friends, conflicts with peers or co-workers).  Id.

[3]  Under the governing regulations, where drug use is a contributing factor material to the determination of disability, plaintiff cannot be found disabled.  20 C.F.R. § 404.1535(b)(1).

[4]  The examining psychologist noted that plaintiff's alcohol and polysubstance dependence was in remission since April 2008.  AT 324.

The GAF scores do not correlate to the severity assessments utilized in Social Security disability determinations.[5]  With respect to the GAFs cited by plaintiff, impairment in the inability to work is only one example of the level of adaptation meriting such a rating.  There is no indication in the records that plaintiff's low GAFs were based on an inability to work.  See, e.g. Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (low GAF does not require ALJ to find disability).  The medical opinions were properly evaluated by the ALJ in the context of the record as a whole.

    B.  Listings

        Plaintiff further contends that the ALJ committed error at steps two and three of the sequential evaluation.  There was no error at step two because the ALJ found that plaintiff met the de minimus threshold of that step by finding that plaintiff has severe impairments of borderline intellectual functioning, major depressive disorder, personality disorder, and substance abuse in remission.  AT 18.  With respect to step three, the ALJ found that plaintiff did not meet or medically equal any of the listed impairments.  The court finds no error with respect to the step three finding.

        The Social Security Regulations "Listing of Impairments" is comprised of impairments to certain categories of body systems that are severe enough to preclude a person

_____

    [5]  65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000) provides in pertinent part:

        Comment: Two commenters recommended that we discuss the Global Assessment of Functioning (GAF) Scale in the introductory paragraphs of final 12.00D.  They noted that we referred to the GAF scale in the preamble to the NPRM (56 FR at 33132) and seemed to encourage its use, but then failed to mention it in the proposed rules.
        Response: We did not adopt the comment.  We did not mention the GAF scale to endorse its use in the Social Security and SSI disability programs, but to indicate why the third sentence of the second paragraph of proposed 12.00D stated that an individual's medical source "normally can provide valuable additional functional information."  To assess current treatment needs and provide a prognosis, medical sources routinely observe and make judgments about an individual's functional abilities and limitations.  The GAF scale, which is described in the DSM-III-R (and the DSM-IV), is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association.  It does not have a direct correlation to the severity requirements in our mental disorders listings.

from performing gainful activity.  <u>Young v. Sullivan</u>, 911 F.2d 180, 183-84 (9th Cir. 1990); 20 C.F.R. § 404.1520(d).  Conditions described in the listings are considered so severe that they are irrebuttably presumed disabling.  20 C.F.R. § 404.1520(d).  In meeting or equaling a listing, all the requirements of that listing must be met.  <u>Key v. Heckler</u>, 754 F.2d 1545, 1550 (9th Cir. 1985).

To meet a listed impairment, a claimant must establish that he meets each characteristic of a listed impairment relevant to his claim.   To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings "at least equal in severity and duration" to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment "most like" the claimant's impairment.  20 C.F.R. § 404.1526.  A finding of equivalence must be based on medical evidence only.  20 C.F.R. § 404.1529(d)(3).

Plaintiff contends she meets or equals Listings 12.02 (organic mental disorder), 12.04 (affective disorder), 12.08 (personality disorder) or 12.09 (substance addiction disorder). The paragraph B criteria of these Listings evaluate the functional loss resulting from the mental disorder.   The paragraph B criteria are the same for Listings 12.02, 12.04, 12.08 and 12.09 and require at least two of the following functional limitations:

> 1.  marked restriction of activities of daily living;
>
> 2.  marked difficulties in maintaining social functioning;
>
> 3.  marked difficulties in maintaining concentration, persistence, or pace; or
>
> 4.  repeated episodes of decompensation, each of extended duration.

20 C.F.R. pt. 404, subpt. P, app. 1, §§12.02(B).  "Marked" means "more than moderate, but less than extreme."  <u>See</u> Listing 12.00(C).  Plaintiff asserts that she fulfills all of the paragraph B functional limitations.

1    In finding that plaintiff did not meet or equal a Listing, the ALJ properly relied on

2 the opinion of state agency physician Dr. Polizos, who specifically considered the Listings cited

3 by plaintiff and determined that plaintiff had only moderate limitations in the first three criteria

4 and had only one or two episodes of decompensation.[6]  AT 326, 336.  Dr. Polizos concluded

5 plaintiff did not meet or equal a Listing.  AT 336-338.  The ALJ also based, in part, his findings

6 of only moderate limitations in the paragraph B criteria on the testimony of plaintiff and her

7 mother and plaintiff's function reports.  AT 19, 43 (plaintiff does errands, chores around the

8 house, and takes care of her infant son), 46-48 (plaintiff testified she had no problems with

9 cooking, does errands with her mother), 168 (plaintiff reported she does all household chores),

10 170 (plaintiff reported hobbies of collecting dolls, sewing, crochet and needlepoint but had not

11 done them for three months because of lack of motivation), 172 (plaintiff gets along "ok" with

12 authority figures), 185-200 (third party function report filled out by mother; plaintiff spends time

13 talking on phone and meeting with people daily), 322-323 (activities of daily living reported to

14 examining psychologist).  Plaintiff also testified that her reported episodes of decompensation

15 were of limited duration and plaintiff was only briefly admitted to a mental health treatment

16 center in August 2008 for suicidal ideation.  AT 41, 270-271.  Under these circumstances, the

17 ALJ's determination that plaintiff does not meet the paragraph B criteria is supported by

18 substantial evidence.

19    The ALJ also considered whether plaintiff satisfied the alternative criteria of

20 paragraph C.[7]  AT 20-21.  The paragraph C criteria require:

21        Medically documented history of a chronic [organic mental
         disorder or affective disorder] of at least 2 years' duration that has
22        caused more than a minimal limitation of ability to do basic work

23

24    [6]  Three episodes of decompensation within one year, each lasting for at least two weeks,
    are required to meet the fourth criterium.  Listing 12.00(C)(4).

25    [7] Listings 12.02 and 12.04 can be met by the alternative criteria set forth in paragraph C.
    Under the regulations, paragraph C criteria are considered only if the paragraph B criteria are not
26 satisfied.  See Listing 12.00(A).

activities, with symptoms or signs currently attenuated by
medication or psychosocial support, and one of the following:

    1. Repeated episodes of decompensation, each of extended
duration; or

    2. A residual disease process that has resulted in such
marginal adjustment that even a minimal increase in mental
demands or change in the environment would be predicted to cause
the individual to decompensate; or

    3. Current history of 1 or more years' inability to function
outside a highly supportive living arrangement, with an indication
of continued need for such an arrangement.

20 C.F.R. pt. 404, subpt. P, app. 1, §12.02(C).

       The ALJ noted that plaintiff had not had repeated episodes of decompensation and

there is no evidentiary support for any claim to the contrary. AT 20.  The ALJ also properly

found no evidence that plaintiff was likely to decompensate in response to a minimal increase in

mental demands or change in environment, noting that plaintiff was able to responsibly deal with

her pregnancy and addressing her homeless situation by moving in with her family.  AT 20, 397

(plaintiff halted use of psychotropic medications during pregnancy), 42-43 (plaintiff testified she

moved in with her parents), 172 (plaintiff reported she could handle changes in routine).  The

ALJ also properly considered plaintiff's ability to maintain fair hygiene and clear and concise

thought processes even when homeless as evidence that plaintiff did not need a highly supportive

living arrangement to function.  AT 21, 269.  Plaintiff fails to demonstrate with competent

medical evidence that she meets either the paragraph B or C criteria.  There was no error in the

step three analysis.

       C. <u>Vocational Expert Testimony</u>

       Plaintiff further contends the ALJ failed to include all of plaintiff's limitations in

the hypotheticals relied on by the ALJ in finding there were a significant number of jobs which

plaintiff can perform.  Hypothetical questions posed to a vocational expert must set out all the

substantial, supported limitations and restrictions of the particular claimant.  <u>Magallanes v.</u>

1   Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's

2   limitations, the expert's testimony as to jobs in the national economy the claimant can perform

3   has no evidentiary value.  DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  While the

4   ALJ may pose to the expert a range of hypothetical questions, based on alternate interpretations

5   of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination

6   must be supported by substantial evidence in the record as a whole.  Embrey v. Bowen, 849 F.2d

7   418, 422-23 (9th Cir. 1988).

8          Plaintiff asserts that the ALJ improperly rejected the testimony of the vocational

9   expert that there would be no jobs available to plaintiff if she was unable to interact appropriately

10  with supervisors or coworkers.  AT 50-51.  Plaintiff also contends the ALJ should have relied on

11  the vocational expert's testimony in response to a hypothetical posed by plaintiff's counsel which

12  incorporated a limitation that plaintiff would not be able to work three to four times a month.

13  There was no error in rejecting this testimony.  As discussed above, the ALJ formulated

14  plaintiff's residual functional capacity based on the opinions of Drs. Finkel and Polizos and that

15  finding is based on substantial evidence in the record as a whole.  The ALJ found plaintiff could

16  perform simple repetitive tasks with occasional public, co-worker, and supervisor contact.  AT

17  21.  This finding is in conflict with the hypothetical relied on by plaintiff.  The ALJ also did not

18  find any limitation with respect to missing work three to four days per month, and such a

19  limitation is inconsistent with the findings of Drs. Finkel and Polizos.  AT 325 (Dr. Finkel

20  assessed plaintiff's ability to work an eight-hour day and attend to a regular work schedule only

21  mildly to moderately impaired, consistent with moderate impairments in concentration, pace and

22  interaction with others), 340-341 (Dr. Polizos assessed moderate impairment in concentration,

23  maintaining regular attendance and ability to complete normal work week and perform at

24  consistent pace without unreasonable number and length of rest periods).  The hypotheticals

25  relied on by the ALJ incorporated the limitations properly assessed.  The ALJ was not required to

26  accept the hypotheticals with more restrictive limitations.

1          D. Evidence Submitted to Appeals Council

2                  Medical records dated November 18, 2009 to April 28, 2011 were submitted to

3     the Appeals Council and made part of the administrative record.  AT 5, 402-430.  The records

4     reflect mental health treatment of plaintiff.  Plaintiff contends these records support her claim of

5     disability.

6                  This court has reviewed the ALJ's decision under the substantial evidence

7     standard with due consideration of these medical records.  See Harman v. Apfel, 211 F.3d 1172,

8     1179-80 (9th Cir. 2000) (where plaintiff submitted additional materials to the Appeals Council in

9     requesting review of the ALJ's decision, court may properly consider the additional materials

10    because the Appeals Council addressed them in the context of denying plaintiff's request for

11    review); see also Ramirez v. Shalala, 8 F.3d 1449, 1451-52 (9th Cir. 1993) (noting that where the

12    Appeals Council declined to review the decision of the ALJ after examining the entire record,

13    including new material, court considers both the ALJ's decision and the additional materials

14    submitted to the Appeals Council); Brewes v. Commissioner of Social Sec. Admin, 682 F.3d

15    1157, 1163 (9th Cir. 2012) ("when the Appeals Council considers new evidence in deciding

16    whether to review a decision of the ALJ, that evidence becomes part of the administrative record,

17    which the district court must consider when reviewing the Commissioner's final decision for

18    substantial evidence").

19                 The additional records do not support plaintiff's claim of disability.  Plaintiff

20    contends these records demonstrate that plaintiff functioned better in a structured environment

21    because her GAF scores improved when she resided with her family.  While the records do

22    reflect an improvement in plaintiff's GAF scores, there is no evidence that this was a result of

23    living in a structured environment as opposed to a simple change in plaintiff's homeless status

24    and cessation of drug use.  Moreover, it appears plaintiff sought no mental health treatment from

25    February 2009 to November 2009 and that when she did, it was in part for the purpose of having

26    a psychiatrist fill out her social security disability benefits paperwork.  AT 416.  The additional

1  records also contain a note from the treating mental health provider that "[patient] appears to be

2  quite interested in getting SSI, yet does not appear to be obviously disabled." AT 404; see also

3  AT 407 (doctor recorded that plaintiff "[n]otably asked for SSI form completion on 1st visit").

4  The court concludes that even with consideration of the additional records, substantial evidence

5  supports the ALJ's decision that plaintiff is not disabled.

6  CONCLUSION

7          For the reasons stated herein, IT IS HEREBY ORDERED that:

8          1.  Plaintiff's motion for summary judgment (dkt. no. 14) is denied;

9          2.  The Commissioner's cross-motion for summary judgment (dkt. no. 15) is

10  granted; and

11          3.  Judgment is entered for the Commissioner.

12    Dated: January 3, 2013

13

14  CAROLYN K. DELANEY
    UNITED STATES MAGISTRATE JUDGE

15

16

17  4 escobar2656.ss

18

19

20

21

22

23

24

25

26